IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NORTHCENTRAL TECHNICAL COLLEGE,

                           Plaintiff,         OPINION AND ORDER

v.

                                           13-cv-425-slc

DORON PRECISION SYSTEMS, INC.,

                           Defendant.

---

       In this diversity action brought under Wisconsin state law, plaintiff Northcentral Technical College claims that defendant Doron Precision Systems, Inc. is liable for breach of contract, breach of warranty and deceptive trade practices because it failed to deliver a fully functional mobile driving simulation system as promised. Pursuant to F. R. Civ. P. 12(b)(6), Doron has filed a two-part motion to dismiss NTC's deceptive trade practices claim as barred by the statute of repose, and to dismiss NTC's claim that Doron breached the purchase order on the ground that Doron's alleged deficiencies did not violate any terms of the purchase order. *See* dkt. 7. For the reasons stated below, I am granting the motion with respect to the deceptive practices claim and denying it with respect to the breach of contract claim.

ALLEGATIONS OF FACT

       Plaintiff Northcentral Technical College (NTC) is a technical college located in Wausau, Wisconsin. Defendant Doron Precision Systems, Inc. (Doron) is a Delaware corporation with a principal place of business in Binghamton, New York. Doron makes driving simulation units.

       Around October 2008, NTC and Doron began discussing Doron's ability to deliver a mobile driving simulation unit for NTC to use in connection with various off-site educational courses and programs and public events. NTC expressed its desire to purchase a driving

simulation unit that could be physically transported away from NTC's premises and would function in a vibration, shock and mobile environment as if it were installed in a fixed, stationary environment. Doron responded that it had the ability to deliver such a unit, and on December 8, 2008, Doron provided NTC with specifications and a drawing of what Doron characterized as a "32' mobile classroom trailer to accommodate both a 460Fire and 550LE driving simulator system," consistent with NTC's request. *See* Exh. A to Compl., dkt. 1, exh. 2.

On February 3, 2009, Doron provided NTC with a written price quote for the purchase of one mobile 460Fire driving simulator cab and one mobile 550LE Driving Simulation System driving simulator cab. *See* Exh. B to Compl., dkt. 1, exh. 2. The price quote did not include the cost of a trailer. On December 7, 2009, Doron provided NTC with a revised price quote that added a 32' Gooseneck Trailer to the two simulators (all of which I will refer to collectively as "the equipment") for a total price of $412,870.78. *See* Exh. C to Compl., dkt. 1, exh. 2.

On December 11, 2009, NTC submitted Purchase Order 18496 (the contract) to Doron for the equipment at a purchase price of $412,870.78. *See* Exh. D to Compl., dkt. 1, exh. 2. NTC also purchased and received a one-year service agreement, which was later increased to a two-year service agreement.

On April 28, 2010, Doron delivered and installed the equipment and NTC accepted it. Immediately upon using the equipment, NTC experienced performance deficiencies and technical difficulties including but not limited to the following:

    a.    The "overhead view" module/screen did not function properly; the equipment repeatedly displayed error messages or experienced system shutdowns

    b.    The CPU for the Fire Unit "right screen" frequently did not connect to the system, causing the computer screen to remain blank during startup

c.  Overheating issues and inadequate and insufficient air-conditioning equipment

d.  Seat-belt(s) did not function properly

e.  Complete system shutdown during routine operation

f.  Various manual-shift failures in simulation mode

g.  System crash upon activating the windshield wiper switch

h.  Circuit boards required replacement on multiple occasions

i.  Display screens repeatedly did not function

j.  Situational display did not function properly

k.  Generator voltage variances

l.  Doron's use of multiple computer operating systems (Windows XP, Windows 2000 and Windows 7) caused system process conflicts like shutdowns, freeze-ups, and system failures

m.  The equipment heat load was excessive (monitored at 125 degrees)

n.  One or more computing units did not start up

o.  The simulated dispatch radio did not function properly

p.  Some of the computerized software scenarios did not start correctly, but started with a sputtering motion before settling into normal run mode

q.  General software problems and glitches

r.  The operation manuals Doron furnished do not match the simulators or computer equipment Doron delivered

s.  Intermittent horn honking

t.  Turn signal did not work properly

u.  Rattling air conditioning fan

v.  Malfunctioning door latch

      w.      Truck steer function pulled to the right

      x.      Power Transformer failed within three (3) months of delivery

      y.      Generator batteries were not set up to be trickle charged during non-use times resulting in total battery failure

Between April 28, 2010 and May 9, 2011, NTC was forced to schedule seven service calls as a result of equipment malfunctions and defect. On September 24, 2010, NTC notified Doron in writing of the numerous performance deficiencies and technical difficulties it experienced when operating the equipment. *See* Exh. E to Compl., dkt. 1, exh. 2.

Between September 2010 and August 2012, NTC and Doron exchanged numerous verbal and written communications concerning various equipment malfunctions and Doron's actions in response. During this time, NTC placed Doron on notice that the equipment was not fit for the ordinary purposes for which such goods are sold or for NTC's particular purpose of having the equipment be fully functional in a vibration/shock/mobile environment. As of October 2012, Doron had failed and refused to remedy adequately the numerous observed and documented performance deficiencies and technical difficulties associated with the equipment.

OPINION

I.      **Legal Standard**

To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a). It is not necessary for NTC to plead specific facts but a plaintiff must give a defendant fair notice of the claims against it and the grounds supporting the claims. *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (citations omitted). In addition, NTC must plead

4

enough allegations of fact to make a claim for relief plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a 12(b)(6) motion, the court must take all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). The court may consider documents attached to the complaint, including letters and contracts, without converting the motion into one for summary judgment. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) (citing Rule 10(c)); *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998). Further, where allegations in the complaint are contradicted by written exhibits attached to the complaint, the exhibits trump the allegations. *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).

**II.  Deceptive Trade Practices Claim**

In its complaint, NTC has brought a claim under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 108.18, alleging that Doron "represented to NTC that it was capable of furnishing goods suitable as a fully functional, mobile driving simulation unit that would function in a vibration/shock/mobile environment as if installed in a fixed, stationary environment." Dkt. 1, exh. 2 at ¶ 48. To prevail on such a claim, NTC must prove three elements:

(1) Doron made a representation to "the public" with the intent to induce an obligation;

(2) the representation was untrue, deceptive or misleading; and

(3) the representation caused NTC a pecuniary loss.

5

>*K & S Tool & Die Corp. v. Perfection Machinery Sales, Inc.*, 2007 WI 70, ¶ 19, 301 Wis. 2d 109, 732 N.W.2d 792 (citing *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 39, 270 Wis. 2d 146, 677 N.W.2d 233; Wis. Stat. § 100.18(11)(b); Wis JI-Civil 2418).

Although a statement made to an individual can be a statement made to "the public," a plaintiff no longer is a member of "the public" for the purpose of Wis. Stat. § 100.18(1) once he or she has entered into a contract to purchase the offered item. *K&S Tool & Die Corp.* at ¶ 23 and ¶ 26 (citing *Kailin v. Armstrong*, 2002 WI App 70, ¶ 44, 252 Wis. 2d 676, 643 N.W.2d 132).

Apart from this, Wis. Stat. § 100.18(11)(b)3 provides that "[n]o action may be commenced under this section more than 3 years after the occurrence of the unlawful act or practice which is the subject of the action." *See Kain v. Bluemound East Industrial Park, Inc.*, 2001 WI App 230, ¶ 14, 248 Wis. 2d 172, 635 N.W.2d 640 (§ 100.18(11)(b)3 is a statute of repose, which requires action to commence within three years after defendant's act, regardless whether plaintiff has discovered injury or wrongdoing).

Doron argues that NTC's claim is untimely because it is based on representations that Doron made in December 2008, more than four years before NTC filed its suit in this court on May 29, 2013. Doron also asserts any representation made within three years of the filing date of this lawsuit (i.e., May 29, 2010 to May 29, 2013) could not meet the "public" element because NTC entered into a contract with Doron on December 11, 2009. NTC's fails to respond to these arguments[1] instead arguing that Doron continued to violate the act during the three-year repose period. *See Werner v. Pittway Corp.*, 90 F. Supp. 2d 1018, 1033 (W.D. Wis. 2000) (noting that Wisconsin has recognized "continuing tort" theory in § 100.18 actions). However, as Doron

---

[1] By failing to respond to Doron's arguments, NTC has waived any arguments in opposition. *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) ("A failure to oppose an argument permits an inference of acquiescence and 'acquiescence operates as a waiver.'") (quoting *Cincinnati Insurance Co. v. East Atlantic Insurance Co.*, 260 F.3d 742, 747 (7th Cir. 2001)).

6

points out, NTC cannot show that Doron continued to violate § 108.18 within the repose period because NTC cannot establish that Doron made a representation to *the public* during that time: for purposes of § 100.18, NTC no longer was a member of the public after it entered into a contract with Doron on December 11, 2009.  As a result, NTC has failed to state a claim under § 100.18 on which relief may be granted. Accordingly, the court will grant Doron's motion to dismiss NTC's deceptive trade practices claim.

### III. Breach of Purchase Order

In Count 1 of its complaint, NTC alleges that Doron breached the December 11, 2009 purchase order, which it refers to as the contract, by:

1. Using computer "towers" and servers that were not rack mounted and instead were held in place on the floor of the gooseneck trailer on high-density foam pads, similar to Neoprene pads.

2. Using computer equipment that was merely commercial components of the type routinely utilized in an office or home-office setting instead of computer components specifically designed for a vibration/shock/mobile environment.

3. Failing to secure computer components with attachment devices. Connectors were simply plugged into sockets with no secure mechanism to retain the connector for the vibration/shock/mobile environment.

4. Failing to use conformal coating or any other material on the print circuit boards to secure and protect components from the vibration/shock/mobile environment.

5. Failing to use industrial computers that are ruggedized and suitable for the vibration/shock/mobile environment.

6. Failing to use a common operating system for computer towers and servers, preventing the equipment from functioning as a system.

As Doron points out, the purchase order simply states that Doron will deliver "one (1) Position 460Fire & one (1) Position 55OLE Driving Simulation System in a 32' Gooseneck Trailer" for $412,870.78 with an additional 1 year service contract for $7,792.98. Exh. D to Compl., dkt. 1, exh. 2. Although Doron previously had provided NTC with a price quote that detailed the components that the simulation system would contain, the deficiencies that NTC identifies in its complaint do not relate to the components listed in the price quote.

Although I understand Doron's argument, it parses NTC's complaint too closely. NTC is alleging that Doron promised to sell NTC a mobile driving simulation system that would function within a vibration/shock/mobile environment but then failed to keep that promise, which resulted in–and is proved by–a system did not function properly. Even though the contract does not state specifically that Doron would deliver a functioning system, this element is implied. "A party to a contract breaches it when performance of a duty under the contract is due and the party fails to perform. Failing to perform a duty under the contract includes defectively performing as well as not performing at all." Wis JI-Civ 3053; *see also* Restatement (Second) of Contracts § 235, comments a and b (1981) (even an insubstantial defect in performance prevents discharge of contractual duty; anything short of full performance is a breach).

Doron raises a good point in arguing that NTC's claims are better characterized as breach of warranty claims, but this distinction matters little in this case. Here, warranty arises from the contract itself. *See* Wis JI-Civ 3200 ("A claim for breach of warranty ordinarily depends upon a contractual relationship between the parties."); Wis JI-Civ 3201 ("A warranty that the goods (product) shall be merchantable is implied in a contract for their sale. . ."); *but see Dippel v. Sciano*, 37 Wis. 2d 443, 450, 155 N.W.2d 55, 58 (Wis. 1967) (noting privity of contract not a requirement in product liability cases). I am not going to dismiss the general breach of contract

8

claim merely because it could have been drafted more tightly as a breach of warranty claim. There is no risk of an assessment of additional or duplicative damages against Doron because NTC's loss is the same either way. As this case proceeds toward summary judgment or trial, it will become clearer how best to frame the specific elements NTC that will have to establish to obtain relief on its allegations that the simulation system did not function properly for the environment for which it was intended. Put another way, although NTC may not have stated this claim as clearly as it could have, NTC has not failed to state a claim. The court will deny this portion of Doron's motion to dismiss.

` ORDER

IT IS ORDERED that defendant Doron Precision System's motion to dismiss (dkt. 7) is GRANTED in part and DENIED in part:

(1) Defendant's motion to dismiss plaintiff's deceptive trade practices claim under Wis. Stat. 100.18 is GRANTED and that claim is DISMISSED.

(2) Defendant's motion to dismiss plaintiff's breach of contract claim is DENIED.

Entered this 10th day of October, 2013.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

9